

Counseling and Advising Clients Exclusively on Laws of the Workplace

Zabell & Collotta, P.C.
1 Corporate Drive
Suite 103
Bohemia, New York 11716
Tel. 631-589-7242
Fax. 631-563-7475
www.Laborlawsny.com

**Ryan M. Eden**
Email: REden@laborlawsny.com

January 4, 2021

**VIA ELECTRONIC CASE FILING**

The Honorable Ann M. Donnelly
United States District Court Judge
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

    Re: McSherry v. Oakland's Restaurant, Inc., et al.
       Case No.: 20-CV-03280 (AMD) (ST)

Your Honor:

  This firm is counsel to Sean McSherry, Plaintiff in the above-referenced FLSA matter. We write jointly with Counsel for Defendants, Littler Mendelson, P.C., respectfully seeking judicial approval of the proposed settlement resolving Plaintiff's claims brought under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Accordingly, we respectfully refer the Court to the enclosed Settlement Agreement, and exhibits thereto, attached to this correspondence.

**Procedural Posture**

  Plaintiff commenced this action alleging violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 et seq. ("FLSA"), and the New York Labor Law, § 190, et seq. ("NYLL") on July 22, 2020. The Parties agreed to several extensions of time for Defendants while they pursued multiple rounds of settlement negotiations. The Parties proceeded with initial document disclosure during the negotiations, including the exchange of time and payroll records. This matter was ultimately resolved without the need for mediation and prior to Defendants' filing of a response.

**Plaintiff's Allegations and Issues in Dispute**

  Defendant Oakland's Restaurant, Inc. ("Defendant Oakland's Restaurant") is a waterfront restaurant and bar located in Hampton Bays, New York. Defendants Stephanie Oakland and Christine Hill own and operate Defendant Oakland's Restaurant. Plaintiff worked for Defendants from in or around 2007 through June

2020 as a bartender. At all times relevant herein, Plaintiff performed non-exempt duties, including, but not limited to, mixing cocktails, ensuring the bar was stocked with bar glasses and beverages, keeping the bar area clean, and servicing customers.

Plaintiff asserts that he worked a fluctuating schedule based upon the restaurant's seasonal needs. From the restaurant's opening in late March/early April through Mother's Day weekend, Plaintiff worked two (2) shifts at the Restaurant's indoor bar from 11:30 a.m. until 11:30 p.m. on either Friday, Saturday, or Sunday. During this time of the year, Plaintiff typically worked twenty-one hours (21) hours per week during this time. From Mother's Day weekend to Father's Day weekend, Plaintiff worked each Friday, Saturday, and Sunday at the Restaurant's outdoor bar. During this time, Plaintiff's Friday and Saturday shifts were from around 10:00 a.m. until 12:00 a.m. and his Sunday shifts were from around 10:00 a.m. to between 11:00 and 11:30 p.m. Accordingly, for this stretch of the year, Plaintiff regularly worked forty and one-half (40.5) hours per week. During Defendants' peak season, from Father's Day weekend until the Tuesday after Labor Day, Plaintiff regularly worked each Wednesday, Thursday, Friday, Saturday, and Sunday. During the Restaurant's peak season, Plaintiff's Monday, Tuesday, Wednesday, Thursday, and Sunday shifts began around 10:00 a.m. and ended around 12:00 a.m. Plaintiff's Friday and Saturday shifts during the Restaurant's peak season began at 10:00 a.m. and ended between 1:30 and 2:00 a.m. In total, Plaintiff regularly worked seventy (70) hours per week during Defendants' peak season. Upon the conclusion of the Restaurant's peak season, Plaintiff's schedule changed to three (3) days per week, Friday, Saturday, and Sunday. During this time, Plaintiff's Friday and Saturday shifts were from around 10:00 a.m. until 12:00 a.m. and his Sunday shifts were from around 10:00 a.m. to between 11:00 and 11:30 p.m. Plaintiff generally worked one (1) or two (2) Friday, Saturday, or Sunday shifts each week in the month of October in addition to bartending Defendants' Halloween party. For the rest of the year, Plaintiff only worked if he was asked to work a special event, such as a holiday party. Notably, Plaintiff worked only one or two weeks in 2017.

Plaintiff maintains that from July 2014 through 2018, he was compensated at a rate of $7.50 per hour for the first forty hours he worked each week and received no additional compensation thereafter. In 2019, Defendants began to record, and compensate Plaintiff for the hours he worked in excess of forty (40) hours per week. However, Defendants compensated Plaintiff at a rate of $7.50, which is below the minimum wage schedule for bartenders working in the hospitality industry in 2019. Furthermore, Defendants failed to issue Plaintiff an additional hour of pay for each shift he worked in which his spread of hours exceeded ten (10) hours.

Plaintiff also assert claims for statutory penalties based on Defendants' violations of New York Labor Law Sections 195(1) and 195(3). Plaintiff maintains he was not provided a notice of his wages at the time of his hire, or with any change in his payrate, in accordance with Section 195 of the New York Labor Law. Additionally, Plaintiff alleges he was not provided with proper wage statements with each payment

of wages. Specifically, prior to 2019, Plaintiff was not provided a statement of wages that contained the total number of hours worked, as his paystubs only included forty (40) hours per week.

**Defendants' Defenses**

Plaintiff's alleged damages are overinflated and in contradiction to available evidence and case law in this Circuit. Plaintiff was a seasonal employee. As such, overtime hours, if any, were only worked during the very limited summer months of each calendar year. Plaintiff has essentially conceded this point. As discussed throughout, Defendants turned over a considerable amount of time and payroll records to Plaintiff, many of which, indicated that Plaintiff's estimated "70 hours worked per week", was overinflated. In producing such evidence, Defendants in turn were also able to undercut Plaintiff's spread of hours allegations. Given that Plaintiff's estimated daily hours could arguably be reduced from 14 to 8 or 9 on several days, spread of hours compensation was no longer owed for many of the days that Plaintiff claimed entitlement.

Next, Plaintiff claims owed minimum wages by virtue of Defendants failing to apprise Plaintiff of the tip credit notice. Defendants dispute this technical violation, and have produced evidence to Plaintiff that he was provided with actual, constructive and/or indirect notice of the tip credit. Defendants also pointed Plaintiff to the recent decision in *Marin v. Apple-Metro, Inc. et al*, 12-cv-5274 (ENV) (CLP), which could act as a hurdle for Plaintiff in prosecuting this otherwise technical violation.

Though Plaintiff alleges to have worked in 2017, Defendants produced evidence demonstrating that Plaintiff was not employed by Defendant Oakland's Restaurant in 2017, as he was out on worker's compensation or some form of similar leave. Such a fact reduced Plaintiff's alleged damages significantly, or by 1/6.

Further, Plaintiff alleges NYLL 195.1 wage notice violations. However, such claim is subject to dismissal as Plaintiff was hired prior to the amendment to New York's Wage Theft Prevention Act, which took effect on April 9, 2011. "An employee who began working before the [2011 amendment to New York's Wage Theft Prevention Act] took effect on April 9, 2011, may not bring a claim for an employer's failure to provide wage notices." *See Canelas v. A'Mangiare, Inc.*, No. 13CV3630-VB, 2015 WL 2330476, at *5 (S.D.N.Y. May 14, 2015); *see also Guan Ming Lin v. Benihana N.Y. Corp.*, No. 10CV1335-RA-JCF, 2012 WL 7620734 (Report and Recommendation adopted by 2013 WL 829098) (S.D.N.Y. Feb. 27, 2013. As such, Defendants were prepared to move to dismiss this claim if they were forced to respond to the Complaint.

Finally, as discussed, Defendants have produced records indicating that they've made good faith efforts to comply with the law, as such, the plaintiff would risk not receiving the award of liquidated damages under either the FLSA and/or NYLL.

### The Settlement Amount

The parties have agreed to resolve Plaintiff's claims for the total amount of Forty-Five Thousand Dollars and Zero Cents ($45,000.00) inclusive of attorneys' fees and costs. Under the terms of the agreement, Plaintiff would receive Thirty Thousand Dollars and Zero Cents ($30,000.00) representing unpaid wages, liquidated damages, and civil penalties under New York Labor Law Section 198 for violations of New York Labor Law Sections 195(1) and 195(3). Further, Plaintiff's counsel would receive Fifteen Thousand Dollars and Zero Cents ($15,000.00) as attorneys' fees and costs, one-third (33.3%) of the total settlement.

### The Proposed Settlement Amount is Fair and Reasonable

In order for the parties' proposed Fed. R. Civ. P. 41(a)(1)(A)(ii) stipulation of dismissal to take effect, the Court must scrutinize and approve the Settlement Agreement. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 2015 U.S. App. LEXIS 13815 (2d Cir. 2015). The Court should approve the Settlement so long as it "reflects a 'reasonable compromise of disputed issues [rather] than mere waiver of statutory rights brought about by an employer's overreaching." *Le v. Sita Information Networking Computing USA, Inc.*, No. 07 Civ. 0086, 2008 U.S. Dist. LEXIS 46174 at *2 (E.D.N.Y. June 12, 2008) (*quoting Lynn's Foods Stores, Inc., v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); see also *Kopera v. Home Depot U.S.A., Inc.*, No. 09 Civ. 8337, 2011 U.S. Dist. LEXIS 71816, at *2 (S.D.N.Y. June 24, 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved.").

According to *Beckert v. Rubinov*, No. 15 CIV. 1951 (PAE), 2015 WL 6503832, at *1 (S.D.N.Y. Oct. 27, 2015), "in determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiffs' range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion."

In this matter, Plaintiff possessed many weekly time slips indicating the number of hours that he worked. Moreover, his payroll records reflect that from 2014 through 2018, Plaintiff was not paid for more than forty (40) hours each week. However, the 2019 payrolls, which include payment for overtime wages, are reflective of the number of hours that he worked. On average, in 2019, Plaintiff worked 66 hours

per week during Defendants' peak season. Plaintiff believes that the payroll records accurately depict the time worked in 2019 and are reflective of his unrecorded hours in prior years.

Assuming Plaintiff's allegations are accurate, to the extent that he worked an average of sixty-six (66) hours per week during Defendants' peak season, we calculated Plaintiff is owed approximately $16,398.00 in unpaid overtime wages, $3,914.00 in unpaid minimum wages, and $4,290.56 in unpaid spread of hours pay, for total unpaid wages of $24,702.56, from July 2014 through the end of his employment in June 2020. Under the current agreement, Plaintiff would receive $30,000.00, nearly 125% of his total alleged unpaid wages. Considering the above factors, we respectfully submit the proposed settlement is a favorable result, and, as such, it should be approved as a fair settlement. *See, Meigel v. Flowers of the World NYC, Inc.*, 2012 U.S. Dist. LEXIS 2359, at *2-3 (S.D.N.Y. Jan 9, 2012) ("Typically, courts regard the adversarial nature of a FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve settlement."). Despite the potential risks of litigation, under this Settlement Agreement, Plaintiff would receive more than his unpaid overtime compensation, as calculated by counsel. Furthermore, this resolution provides for an expediated recovery on behalf of our client.

### Other Settlement Terms

The terms of the Settlement Agreement are in accordance with the decision in *Cheeks v. Freeport Pancake House, Inc.*, No. 14-299 (2d Cir. 2015). The proposed terms allow for the Settlement Agreement to be publicly filed for the purpose of judicial review for fairness. The Settlement Agreement does not contain any confidentiality or non-disparagement provisions allowing Plaintiff to make truthful statements relating to his recovery, Defendants' pay practices as well as his experience litigating this action in accordance with *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 180 (S.D.N.Y. 2015). Further, under the agreement, Plaintiff is waiving only his wage-related claims under the FLSA and NYLL arising in this case. Finally, this agreement was reached as a result of arm's-length negotiations between experienced counsel.

### Attorneys' Fees are Fair and Reasonable

This office expended significant time drafting pleadings, copying, scanning and reviewing over a thousand daily time slips, and participating in numerous negotiations all of which were necessary to secure a successful settlement for Plaintiff. In total, Plaintiff's counsel (and staff) expended a total of 19.6 hours litigating this case. Additionally, Plaintiff's counsel has incurred filing fees and service costs all of which are included in the one-third allocation for attorneys' fees and costs.

January 4, 2021
Page 6 of 6

      Moreover, the retainer agreement between Plaintiff and this office provides for one-third (1/3) of the settlement amount to be received by Plaintiff's counsel. Attorneys' fees in an amount of one-third (1/3) of the settlement amount is ordinary in the Second Circuit. *Najera v. Royal Bedding Co., LLC*, No. 13-CV-1767 (NGG) (MDG), 2015 WL 3540719, at *2 (E.D.N.Y. June 3, 2015) *citing* 29 U.S.C. § 216(b); *see also Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13–CV–3234 (LB), 2013 WL 5308277, at *1 (E.D.N.Y. Sept.19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery). Accordingly, for the purposes of facilitating settlement, the parties agreed to resolve Plaintiff's back wages claims and attorneys' fees separately, in an amount equal to (1/3) of the overall settlement. Pursuant to the Settlement Agreement, Plaintiff's counsel will receive Fifteen Thousand Dollars and Zero Cents ($15,000.00) as attorneys' fees and costs – no more than one-third (33.3%). Plaintiff's counsel believes that the fee agreed upon in the terms of the Settlement Agreement is fair and reasonable.

      We are pleased the parties could work collaboratively in resolving this matter without the need to burden the Court. Counsel for both Parties remain available should Your Honor require additional information in connection with this submission.

Respectfully submitted,

**ZABELL & COLLOTTA, P.C.**

*/s/ Ryan M. Eden*

Ryan M. Eden

Encl.

cc:    Client
       All Counsel (*Via* Electronic Case Filing)